UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EARL AVERY                                            14-CV-6876 (FB)(RML)

                     Plaintiff,                   **AMENDED COMPLAINT**

    -against-                                      **JURY DEMAND**

CITY OF NEW YORK, P.O. ANTHONY
CANALE (Shield #15509), SERGEANT
SONIA CHRISTIAN (Shield #3066),
P.O. TIMOTHY RIZZO (Shield #7939) and
P.O. KENNETH SEPULVEDA (Shield #22097)

                     Defendants.
-----------------------------------------------------------x

      Plaintiff, by his attorney, Law Office of Philip Akakwam, P.C., complaining of the defendants, City of New York, P.O. Anthony Canale, Sergeant Sonia Christian, P.O. Timothy Rizzo, and P.O. Kenneth Sepulveda (collectively "defendants"), upon information and belief alleges as follows:

## INTRODUCTION

      1. This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to plaintiff by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], and arising under the laws and statutes of the City and State of New York.

      2. Plaintiff seeks monetary damages for: the false arrest, false imprisonment and use of excessive force by defendants against plaintiff and otherwise, for the violation of his federally guaranteed constitutional and civil rights. Plaintiff seeks whatever other relief is appropriate and necessary in order to serve the interest of justice and assure that his remedy is full and complete.

## JURISDICTION

3. The jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343[3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is also invoked pursuant to 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction. Plaintiff requests that the Court invoke pendent jurisdiction over any and all claims arising under the laws and Constitution of the State of New York.

5. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff, a black male, is a resident of the City of New York, County of Kings and State of New York.

7. Defendant, City of New York (City) is a municipal entity existing under the laws and Constitution of the State of New York and was the public employer of the defendant police officers through its Police Department - New York City Police Department- and the actions of the police officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

8. Defendants P.O. Anthony Canale, Sergeant Sonia Christian, P.O. Timothy Rizzo, and P.O. Kenneth Sepulveda were police officers employed by defendant City of New York.

9. Plaintiff is suing the defendant officers in their individual and official capacities.

## NOTICE OF CLAIM

10. Plaintiff, in furtherance of his state causes of action, filed timely notice of claim against the City, in compliance with General Municipal Law Section 50.

11. More than 30 days have elapsed since service of said notice, and the City has failed to pay or adjust the claim.

12. This action has been commenced within one year and ninety days after the happening of the events upon which these claims arise.

## FACTS COMMON TO ALL CAUSES OF ACTION

13.  On or about January 10, 2014, at approximately 11:00 p.m., plaintiff was arrested, detained and subjected to excessive force in front of his home located at 155-18 115th Road, Jamaica, NY 11434 by defendant officers without probable cause and without justification or reasonable suspicion.

14.  On the date and time aforesaid, plaintiff was driving his 2007 Audi vehicle and was reversing the vehicle into his driveway. As plaintiff was half-way into his driveway, he saw flash lights and one of the defendant officers knocked on the window of plaintiff's car.

15. The officer demanded to see plaintiff's driver's license. Plaintiff asked the officer if it was okay for him to put the vehicle's gear in park mode to prevent it from moving while he tried to produce his license and registration. The officer ignored plaintiff's request and continued to ask for license and registration.

16. Plaintiff started looking for his driver's license in his pockets and as he was still going through his pockets to get the license, three more police officers approached him.

17. While one officer was demanding plaintiff's license and registration, another one was pulling at the door of his vehicle demanding that plaintiff open the door, and yet another officer was knocking on the car windows and demanding that plaintiff roll down the windows.

18. Plaintiff showed them his credit card and told them that he needed time to find his

3

license. He told them that the license must be in one of his pockets because he had just used it as identification while buying pizza (plaintiff had pizza in his car during this incident) at a pizza place few minutes before this incident. He asked for time to find it.

19. But the officers would not give him time to find his license. Plaintiff offered to give them his driver license number so that they could check his records. As plaintiff began giving the license number and one of the officers was writing it down, another officer yelled that they had no time for that and demanded that plaintiff exit his car or they would rip him out.

20. One of the defendant officers opened plaintiff's car and began to threaten to drag him out of the car. Plaintiff told them that it would not be necessary to rip him out because he would exit by himself as requested. As plaintiff began to exit the car, some of the officers held him by the hand.

21. After plaintiff got out of his car, he was searched and ordered by the officers to go sit on the rear bumper of the vehicle. The officers threw some of plaintiff's work tools into the street. Plaintiff asked the officers why they were treating him like a criminal. He told them that he was in front of his house and his family were inside the house.

22. While plaintiff was at the rear of his vehicle as ordered, the defendant officers proceeded to search plaintiff's vehicle.

23. As the officers were searching plaintiff's vehicle, plaintiff told them that he had just come back from work, will not interfere with them doing their job and that after they are done doing their job, he would be going inside his house to have a good night sleep with his family.

24. When plaintiff said this, the female officer replied "you don't get to decide if and when you go home." Thereafter, the officers placed plaintiff under arrest and asked him to put his

hands behind his back.

25. The officers had plaintiff in a "chickenwing" hold and as his hands were behind his back, they forced his arms upwards towards his neck while one officer was pushing down on plaintiff's shoulders causing severe pain to plaintiff's shoulder joints.

26. Then they cuffed plaintiff's hands behind his back. The cuffs were put so tight that plaintiff complained to the officers.

27. After cuffing plaintiff, the officers tripped him so that he fell down hard on the ground. And as he was lying on the ground, some of the officers had their knees pressed hard on plaintiff's face and other parts of his body.

28. The officers picked plaintiff up by the handcuffs and threw him into the backseat of their vehicle.

29. As these were happening, plaintiff's wife and kids came out of their apartment and watched as plaintiff was being assaulted in their driveway. Plaintiff's kids were all crying as they watched their father being assaulted by the defendant officers. Plaintiff's neighbors were also watching as plaintiff was being assaulted by defendant officers.

30. Thereafter, plaintiff was transported to the 113th police precinct. On their way to the precinct, the officers blamed plaintiff for causing his family to cry while they were assaulting him.

31. Following plaintiff's arrest, his car was impounded and driven to the precinct by one of the officers.

32. At the precinct, the officers searched plaintiff again and found his driver license in his pocket which he had told them at the beginning that he knew he had it on him but needed time to

find it.. But the officers told him that finding his license at that point was too late because it won't stop them from detaining him.

33. Plaintiff was strip-searched, fingerprinted, photographed and then thrown into a police cell where he was detained for many hours before he was taken to Central Booking.

34. At the Central Booking, plaintiff was further detained in a holding cell until the following day when he was arraigned in court.

35. To cover up their unlawful assault of plaintiff, the defendant officers provided false information to the District Attorney leading to plaintiff being charged with reckless driving, resisting arrest and obstructing governmental administration. The matter was adjourned in contemplation of dismissal.

36. Throughout the period of plaintiff's detention, his hair salon business remained closed and he lost business and income as a result thereof.

37. After his release, plaintiff went to Queens Hospital where he received treatment for severe pain to his shoulder, elbow and wrists.

38. That each and every officer who was present at the location of plaintiff's arrest and/or at the precinct or facility knew and was fully aware that plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

39. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

40. Plaintiff suffered physical injuries, including but not limited to a tear of the rotator cuff in his shoulder which may require surgery to fix.

41. And plaintiff suffered and continues to suffer emotional distress, fear, humiliation, embarrassment, shock, loss of liberty, loss of income, psychological trauma, pain, and damage to reputation as a consequence of the defendants' unlawful conduct alleged herein.

42. Plaintiff suffered violations of his federally guaranteed constitutional and civil rights including rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

43. Defendant Officers acted together and in concert sanctioning and ratifying and otherwise condoning the wrongful actions being taken by each of the defendant Officers in a collective manner and fashion.

44. Plaintiff has no other adequate remedy at law but for this action.

**AND AS FOR A FIRST CAUSE OF ACTION:**
**42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT**

45. Plaintiff reiterates paragraphs 1 through 44 and incorporates such by reference herein.

46. By their conduct and under color of law, defendant officers deprived plaintiff of his constitutional right to be free from false arrest and false imprisonment.

47. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

**AND AS FOR A SECOND CAUSE OF ACTION:**
**42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE**

48. Plaintiff reiterates paragraphs 1 through 47 and incorporates such by reference herein.

49. By their conduct and under color of law, defendant officers deprived plaintiff of his constitutional right to be free from excessive and unreasonable force.

50. As a direct and proximate result of the misconduct detailed above, plaintiff sustained the damage herein before stated.

## AND AS FOR A THIRD CAUSE OF ACTION:
## 42 U.S.C. § 1983 - FAILURE TO INTERCEDE

51. Plaintiff reiterates paragraphs 1 through 50 and incorporates such by reference herein.

52. The defendant officers and other John Doe police officers each had opportunities to intercede on behalf of plaintiff to prevent the excessive use of force and unreasonable seizure but due to their intentional conduct or deliberate indifference declined or refused to do so.

53. As a direct and proximate result of the misconduct detailed above, Plaintiff sustained the damage herein before stated.

## AND AS FOR A FOURTH CAUSE OF ACTION

**(Monell/42 U.S.C. Section 1983: Claim Against Defendant City of New York)**

54. Plaintiff reiterates paragraphs 1 through 53 and incorporates such by reference herein.

55. The foregoing violations of plaintiff's federal constitutional rights and resultant injuries were directly and proximately caused by conduct, chargeable to defendant City, amounting to deliberate indifference to the constitutional rights of persons, including plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

56. The defendant City, through its police department, the NYPD, has developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of plaintiff's rights.

57. It was the policy and/or custom of the City to undertake inadequate and improper investigations of civilian complaints of police misconduct and to punish inadequately officers

involved in complaints which were substantiated.

58. Both Internal Affairs Bureau (IAB) and the Civilian Complaints Review Board (CCRB) have substantially failed in their responsibilities to investigate misconduct and to discipline transgressors. The IAB investigations of brutality rarely lead to any administrative trials and, in the rare instances that charges are sustained administratively, the punishment is minimal, lacking any deterrent effect.

59. The defendant City has been on notice for more than a generation that brutality is widespread and that particular reforms need to be implemented. Acts of brutality have been tolerated by the defendant City.

60. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of wrongfully profiling, arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in some illicit activities.

61. The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs were implemented or tolerated by policymaking officials for defendant City including but not limited to, the New York City Police Commissioner, who knew or should have known that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases.

62. Defendant City failed to provide proper training and/or failed to insure that the training provided was adequately understood in regard to the following tasks which police officers commonly perform:

    (a)    The determination of probable cause to make an arrest;

    (b)    The duty to take into account the totality of the circumstances in determining the existence of probable cause to make an arrest;

    (c)    The circumstances under which investigative detentions may lawfully occur and the manner in which they may lawfully be executed;

    (d)    The very limited circumstances under which a warrantless search may be carried out.

63. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when there is probable cause for such arrest.

64. The policymaking officials at NYPD know or ought to have known that such issues that regularly arise in the investigation and prosecution of criminal cases either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations and making the wrong choice.

65. The aforementioned policymaking officials knew that the wrong choice by police

officers concerning determination of probable cause will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

66. Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct. For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling. And in *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

67. Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

68. As a result of inadequate training of police officers on the practical meaning of probable cause for arrest, officers frequently detain and/or arrest citizens based on their hunches, inklings, or mere suspicion and without reasonable or probable cause.

69. As part of its policies, customs and practices, Defendant City has failed to take proper corrective and punitive actions against overreaching police officers thus creating the impression that crime reduction is paramount and triumphs over constitutional rights in all circumstances.

70. Prior to and at the time of the incident alleged herein, the defendant City was aware of

the need for more or different training, rules, regulations, investigation and discipline relating to police officers engaged in racial profiling, and was deliberately indifferent to that need.

71. As a direct and proximate result of the City's policies and deliberate indifference, defendants violated plaintiff's constitutional rights causing plaintiff to suffer substantial damages.

## AND AS FOR A FIFTH CAUSE OF ACTION
### (Negligent Hiring, Training and Supervision Under State Law; Defendant City)

72. Plaintiff reiterates paragraphs 1 through 71 and incorporates such by reference herein.

73. By virtue of the foregoing, defendant City of New York is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NYPD with regard to their aforementioned duties.

74. As a direct and proximate result of the acts and omissions of the defendants described in this Complaint, plaintiff suffered a significant loss of his liberty and violation of his federal constitutional rights, was prevented from attending to his necessary affairs and suffered and continues to suffer significant emotional pain, distress, humiliation and embarrassment.

## AND AS FOR A SIXTH CAUSE OF ACTION:
### PENDENT CLAIM OF ASSAULT AND BATTERY

75. Plaintiff reiterates paragraphs 1 through 74 and incorporates such by reference herein.

76. By their conduct, as set forth above, defendant officers committed acts of battery against plaintiff which included beating, punching and kicking him about the face and body without cause at the 81st precinct. The use of physical force against plaintiff was willful, unwarranted, and excessive.

77. The defendant City is responsible for the excessive and unnecessary force used by the defendant officers as set forth above because the misconduct occurred while they were acting in the scope of their employment, specifically in the course of arresting plaintiff, and while they were executing their responsibility to hold him safely in police custody at the 81st precinct.

78. Upon information and belief, defendant City had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City failed to take any appropriate actions to assure plaintiff's safety and security and failed to protect and/or safeguard plaintiff's interests.

79. By reason of and as a consequence of the assault detailed above, plaintiff suffered severe and serious physical and mental injuries.

## AND AS FOR A SEVENTH CAUSE OF ACTION: PENDENT CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT

80. Plaintiff reiterates paragraphs 1 through 79 and incorporates such by reference herein.

81. Plaintiff was wrongfully, unlawfully and unjustifiably charged, arrested, detained and deprived of his liberty against his will, and was imprisoned by defendant officers and other unknown John Doe police officers.

82. At all relevant times, the defendant officers acted forcibly in apprehending plaintiff.

83. The wrongful, unjustifiable, and unlawful arrest, detention and imprisonment of plaintiff was carried out without a warrant.

84. Following his arrest, plaintiff was wrongfully harassed, threatened and subjected to the taking of mug shots and fingerprinting.

85. The false and unlawful arrest and imprisonment of plaintiff was without any

justification or probable cause, and was forcible and against his will.

86. All of the foregoing occurred without any fault or provocation on the part of plaintiff.

87. At all relevant times, the defendant officers and other John Doe police officers who were responsible for the false arrest and imprisonment of plaintiff were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

88. As a direct and proximate result of the false arrest and imprisonment of plaintiff as detailed above, plaintiff sustained the damage herein before stated.

## AND AS FOR AN EIGHT CAUSE OF ACTION: PENDENT CLAIM FOR GROSS NEGLIGENCE

89. Plaintiff reiterates paragraphs 1 through 88 and incorporates such by reference herein.

90. The conduct of the defendant officers in falsely arresting, detaining and battering plaintiff was grossly negligent and intended to cause plaintiff to suffer severe injury and extreme mental and emotional distress.

91. At all relevant times, said defendant officers were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

92. As a direct and proximate result of the false arrest and imprisonment of plaintiff as detailed above, plaintiff sustained the damage herein before stated.

## AND AS FOR A NINTH CAUSE OF ACTION: PENDENT CLAIM - RESPONDENT SUPERIOR

93. Plaintiff reiterates paragraphs 1 through 92 and incorporates such by reference herein.

94. At all relevant times, all defendant employees of the City of New York were acting

for, upon, and in furtherance of the business of their employer and within the scope of their employment.

95. Consequently, the City is liable under the doctrine of *respondeat superior* for their tortious actions.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

i. For compensatory damages in an amount to be determined at trial - against all defendants, jointly and severally;

ii. For punitive damages against the individual defendants in an amount to be determined at trial;

iii. For reasonable attorneys' fees, together with costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

iv. For pre-judgment interest as allowed by law; and

v. For such other and further relief as the court deems just and proper.

Dated: Brooklyn, New York
April 13, 2015

                                        LAW OFFICE OF PHILIP AKAKWAM, P.C.

                                        By:      /s/
                                                Philip Akakwam, Esq.
                                                Attorneys for the Plaintiff
                                                303 Livingston Street, 2nd Floor
                                                Brooklyn, N.Y. 11217
                                                (718) 858-2488

14-CV-6876 (FB)(RML)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EARL AVERY

        Plaintiff,

  -against-

CITY OF NEW YORK, P.O. ANTHONY
CANALE (Shield #15509), SERGEANT
SONIA CHRISTIAN (Shield #3066),
P.O. TIMOTHY RIZZO (Shield #7939) and
P.O. KENNETH SEPULVEDA (Shield #22097)

        Defendants.

# AMENDED COMPLAINT

LAW OFFICES OF PHILIP AKAKWAM, P.C.
Attorneys for Plaintiff
Office and Post Office Address
303 Livingston Street, 2nd Floor
Brooklyn, N.Y. 11217
(718) 858-2488

TO:

Service of a copy of the within is hereby admitted.

Dated:

_____